UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Jeremy David Mount,<br><br>Defendant. | Case No. 16-cr-237 (SRN/BRT)<br><br><br><br>**ORDER** |

Katherine Buzicky, United States Attorney's Office, 300 S. 4th St. Ste 600, Minneapolis MN 55415, for the Government.

Jeremy David Mount, Reg. No. 20776-041, FCI-Sandstone, P.O. Box 1000, Sandstone, MN, 55072, Pro Se Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Jeremy David Mount's Pro Se Motion for Release (("Motion for Release") [Doc. No. 138]) pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Mount seeks compassionate release and requests that the Court reduce his prison sentence to home confinement because of the dangers posed by COVID-19. The Government filed a response in opposition to Mr. Mount's Motion for Release. (Gov't's Opp'n [Doc. No. 143].)

## I.  BACKGROUND

### A.  Procedural and Factual Background

In February 2017, Mr. Mount pleaded guilty to the production, attempted production, and receipt of child pornography. [Doc. No. 33.] On August 1, 2017, the Court sentenced Mr. Mount to a 262-month term of imprisonment. [Doc. No. 53.]

Mr. Mount is incarcerated at the Federal Correctional Institution ("FCI") in Sandstone, Minnesota. He has a projected release date of March 25, 2035. BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed July 15, 2020).

### B.  Parties' Positions

In his motion, Mr. Mount requests compassionate release in light of the risks associated with the COVID-19 pandemic. (Def.'s Mot. at 1.) He expresses concern about FCI-Sandstone's testing procedures for the virus, the sparse use of masks among inmates, and his inability to social distance in the facility. (*Id.*); (*see also* Def.'s Reply [Doc. No. 150] at 1-2) (further claiming that the conditions of imprisonment violate the Eighth Amendment). Moreover, he argues that, in light of the COVID-19 outbreak, he need not exhaust any administrative remedies and may instead "directly petition [the] Court." (Declaration of Jeremy Mount ("Mount Decl.") [Doc. No. 139] at 1.) He also emphasizes that his family circumstances support his request for release. (*Id.* at 1-2) (stating that he would need to care for his parents should they fall ill as their "only surviving child," and he has a fiancé and "two young children who miss him"). He further requests release based on his work performance, disciplinary record, and volunteer work while incarcerated. (*Id.*)

2

In opposition, the Government maintains that Mr. Mount's motion should be denied for three reasons. First, the Government argues that his motion should be denied because he failed to exhaust his administrative remedies or alternatively that he failed to wait 30 days from the warden's receipt of a request for release before seeking judicial intervention. (Gov't's Opp'n at 10.) As a result, the Government asserts that the Court lacks jurisdiction to consider Mr. Mount's motion. (*Id.* at 12.) Second, the Government contends that, even if Mr. Mount meets the administrative exhaustion requirement, his motion fails on the merits. (*Id.* at 16-20.) Finally, the Government argues that Mr. Mount would pose a danger to the community if released, and that granting his release after having served only 35 months of his 262-month sentence would fail to reflect the seriousness of his crimes. (*Id.* at 19-20.)

## II.     DISCUSSION

### A.     The Law

A court may not modify a term of imprisonment once it has been imposed except pursuant to statute. *United States v. Kachina*, No. 15-cr-68 (ADM/FLN), 2020 WL 2539270, at *1 (D. Minn. May 19, 2020) (citing 18 U.S.C. § 3582(c)); *see also United States v. McIndoo*, -- F. Supp. 3d. -- , 2020 WL 2201970, at *2 (W.D.N.Y. May 6, 2020). The compassionate release provision, as amended by the First Step Act, is such a statutory exception. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act[1] amended this provision with the goal of increasing "the use and transparency of compassionate release" and the section now allows defendants, for the first time, to petition district courts directly for compassionate release. *United States v. Stephenson*, No. 3:05-cr-511, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020). Under the old regime, defendants could petition only the Director of the Bureau of Prisons ("BOP"), who could then make a motion, at his or her discretion, to the district court. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018). The amended provision provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that ... the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A).

While the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered

---

[1] The First Step Act also amended other provisions of the U.S. Code with the goal of "promot[ing] rehabilitation of prisoners and unwind[ing] decades of mass incarceration." *Stephenson*, 2020 WL 2566760, at *2 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)).

4

extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).  The Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the "medical condition of the defendant," the defendant's "age" and "family circumstances."  U.S.S.G. 1B1.13 cmt. n.1(A)-(C).

As relevant here, a defendant's medical condition, in narrow circumstances, may form the basis for a reduction in sentence under the Commission's policy statement.  *See id.*  The policy statement provides that a reduction is warranted if the defendant is suffering from either (1) a "terminal illness" or (2) a serious physical or mental condition "that substantially diminishes" the ability of the defendant to provide self-care and "from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).

A defendant's family circumstances, in similarly narrow instances, may also justify compassionate release.  The policy statement provides that a reduction is warranted by the "death or incapacitation of the caregiver" of defendant's "minor children" or the "incapacitation of the defendant's spouse or registered partner" when the defendant would be the only available caregiver for that spouse or partner. *Id.* cmt. n.1(C); *see United States v. Shamilov*, No. 19-cr-238 (SRN), 2020 WL 2029600 (D. Minn. Apr. 28, 2020).  The policy statement also provides a catch-all provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with

5

previously described categories." [2] *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13)).

To apply the Commission's guidance above, in conjunction with the amended statutory directive in 18 U.S.C. § 3582(c)(1)(A), numerous district courts, including in this district, have found that the following three issues must be considered in evaluating a compassionate release application: (1) whether "extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community." *United States v. White*, 13-cr-20653, 2020 WL 2557077, at *4-5 (E.D. Mich. May 20, 2020) (quoting *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019) (citing *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019); (further citations omitted)).

Moreover, as the movant, the defendant carries the "burden to show he is entitled to a sentence reduction." *United States v. Estabrook*, No. 10-cr-109, 2020 WL 2544422, at

---

[2] Although the policy language only allows the Director of the BOP to identify other grounds that amount to "extraordinary and compelling reasons," the Court agrees with numerous district courts, including in this Circuit, that have interpreted this provision to allow courts, in addition to the Director, the discretion to consider other relevant factors. *See United States v. Ramirez*, No. 17-10328-WGY, 2020 WL 2404858 (D. Mass. May 12, 2020) (collecting cases and finding that courts "have the authority to consider other relevant factors" because such an interpretation "best comports with the First Step Act."); *see also United States v. Brown*, -- F. Supp. 3d--, 2020 WL 2091802, at *5-7 (S.D. Iowa Apr. 29, 2020) (finding that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it.").

*4 (D.N.D. May 19, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (finding burden is on the defendant to establish that a sentence reduction is warranted under 18 U.S.C § 3553(c)(2)); *see also United States v. Morrison*, 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) ("[t]he defendant has the burden to show he is entitled to a sentence reduction.") (internal quotation and citation omitted); *United States v. Cabrera*, No. 10-cr-20016-JES-DGB, 2020 WL 2549941, at *2 (C.D. Ill. May 19, 2020) (same) (internal quotation omitted).

### B. Analysis

#### 1. Exhaustion of Administrative Remedies

The Court first considers whether it has the authority to grant Defendant's motion. As explained above, the compassionate release statute expressly provides that a court may only reduce a defendant's sentence pursuant to the provisions of the statute after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18 U.S.C. § 3582(c)(1)(A). In other words, to be entitled to relief pursuant to § 3582(c)(1)(A), a defendant generally must exhaust administrative remedies or wait 30 days from the warden's receipt of a request for release, as a precondition to seeking judicial intervention.

Because Mr. Mount does not appear to have exhausted his administrative remedies in this regard, he is "not eligible for relief under the statute." *United States v. James*, No. 15-cr-255 (SRN), 2020 WL 1922568, at *3 (D. Minn. Apr. 21, 2020). The Court "cannot consider a motion for compassionate release for which the prisoner has not first sought

relief from the BOP." *Id.*; *see, e.g.*, *Shamilov*, 2020 WL 2029600, at *2; *United States v. Vangh*, No. 16-335 (MJD), 2020 WL 1940808, at *3 (D. Minn. Apr. 22, 2020); *United States v. Bergren*, No. 00-cr-375 (DWF/RLE), 2020 WL 1910585, at *1 (D. Minn. Apr. 20, 2020) (denying motion for compassionate release due to COVID-19 for failure to exhaust and on the merits); *United States v. Annis*, 16-cr-1951 (JRT/KMM), 2020 WL 1812421, at *2 (D. Minn. Apr. 9, 2020) (finding the court had no authority to grant compassionate release due to COVID-19 pursuant to 18 U.S.C. § 3582(c)(1)(A) because the defendant had not exhausted his administrative remedies).

Indeed, as the Third Circuit observed in *United Sates v. Raia*, strict compliance with § 3582(c)(1)(A)'s exhaustion requirement is warranted here given both the BOP's "statutory role" and "efforts" in curtailing the virus' spread among the inmate population, and the Attorney General's own directive to the BOP under Section 12003(b)(2) of the Coronavirus Aid, Relief and Economic Security ("CARES") Act. 954 F.3d 594, 597 (2020).  Under the CARES Act, the Attorney General has directed the BOP to "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic[.]" Pub. L. No. 116-136, 134 Stat. 281 (2020); Memorandum for Director of Bureau of Prisons, March 26, 2020 https://www.bop.gov/coronavirus/.  The *Raia* court determined that these actions demonstrate the BOP's willingness to take the defendant's request for home confinement seriously and prioritize it over other, non-COVID-19 related requests. 954 F.3d 594, 597 (2020) (noting that it "anticipate(s) that the statutory requirement will be speedily dispatched in cases like this one.")  Like in *Raia*, the Court therefore finds that the BOP

8

must be granted an opportunity to meet, at a minimum, the 30-day statutory requirement to assess a request for home confinement and use its own expertise garnered from responding to the spread of the virus. *Id.* (finding that "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that the ...exhaustion requirement is of added—and critical—importance.").

### 2. Compassionate Release Under § 3582(c)(1)(A)

Even if the Court had authority to consider Mr. Mount's motion, compassionate release under these facts is not warranted. As explained above, the Sentencing Commission's guidance provides that an inmate's medical condition can, alone, sometimes be sufficiently extraordinary and compelling under § 3582(c)(1)(A). U.S.S.G. § 1B1.13 cmt. n.1(A)(i) (noting that the condition must be "serious and advanced with an end of life trajectory" or "substantially diminish the ability of the inmate to provide self-care" within the facility and be one "from which he or she is not expected to recover."). Alternatively, an inmate's serious medical condition "in combination with" additional factors may also justify sentence reduction. U.S.S.G.§ 1B1.13 cmt. n.1(A)-(D).

Here, Mr. Mount argues that the risk related to the COVID-19 pandemic, in combination with his familial situation, warrant compassionate release. He does not claim to have any specific medical condition that increases his susceptibility to the virus.

While the Court does not intend to diminish the risk of COVID-19 in the federal prison system, the Court agrees with the findings of several courts that "mere speculation of the possibility of contracting the virus" is insufficient to justify release under § 3582(c)(1)(A). *United States v. Fry*, No. 11-cr-141 (PAM/KMM), 2020 WL 1923218, at

9

*1 (D. Minn. Apr. 21, 2020) (citing *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also Raia*, 954 F.3d 594, 597 (2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). Rather, district courts require, in the context of the general danger presented by COVID-19, that an inmate demonstrate both "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, --F. Supp. 3d--, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases); *Ramirez*, 2020 WL 2404858, at *3; *Shamilov*, 2020 WL 2029600, at *3.

Against these standards, Mr. Mount fails to present extraordinary and compelling reasons for his release. Mr. Mount, who is 44 years of age, is not at an age that is particularly susceptible to an increased risk of COVID-19 complications. CDC, *Coronavirus Disease 2019: People Who Are At Higher Risk*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed July 15, 2020). He also does not assert that he has any conditions that make him more vulnerable to becoming seriously ill should he contract COVID-19. The Court is therefore unable to find that Mr. Mount is at an elevated risk of developing the more severe symptoms of COVID-19.

Mr. Mount has also failed to demonstrate a particularized risk of contracting the disease. To date, FCI-Sandstone currently has one reported case of COVID-19. BOP COVID-19 Coronavirus Resource Page, https://www.bop.gov/coronavirus/ (last accessed July 15, 2020). Thus, while Mr. Mount avers that FCI-Sandstone has failed to take

necessary steps to mitigate the virus' spread among the inmate population, (Def.'s Mot. at 1), the facility appears to have been largely successful at stopping any spread as of this writing.[3] Additionally, there is no indication that FCI-Sandstone will be unable to handle an outbreak at this time or otherwise accommodate Mr. Mount's specific health concerns should he contract the virus.

Regarding his family circumstances, while the Court is sympathetic to Mr. Mount's concerns, his request does not fall within the Commission's policy statement. He does not seek release because he is the only available person to care for a minor child or spouse. Rather, he seeks release to assist his parents should they fall ill and his spouse in helping raise his children. The Court therefore finds that he cannot demonstrate that his family circumstances warrant compassionate release. *See United States v. Arafat*, No. 12-cr-00045 (SRN/JJG), 2020 WL 3790727, at *7 (D. Minn. July 7, 2020) (denying compassionate release, in part, because alleged family circumstances did not warrant release when inmate did not assert he was the only available caretaker for a minor child or spouse).

The Court therefore finds that Mr. Mount has not demonstrated circumstances warranting compassionate release. Nor does the Court find that other compelling

---

[3] Among the measures the BOP has taken are: (1) prohibiting all social and volunteer visits; (2) suspending inmate movement, with limited exceptions; (3) suspending legal visits for 30 days (with case-by-case exceptions); (4) screening staff through self-reporting and temperature checks; (5) screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. BOP Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed July 15, 2020).

circumstances support his request. In fashioning an appropriate sentence, the Court applied the § 3553 factors to Mr. Mount.[4] While Mr. Mount's participation in prison programming is encouraging, he has only served 35 months of his 262-month sentence.[5] Reducing his sentence so dramatically would not "promote respect for the law, provide just punishment, afford adequate deterrence, []protect the public from further crimes" nor "reflect the seriousness of his offense." *United States v. Schultz*, No. 17-cr-193, 2020 WL 2764193, at *7 (W.D.N.Y. May 28, 2020) (citing 18 U.S.C § 3553(a)). Indeed, as noted in his plea agreement, Mr. Mount's underlying offense involved taking sexually explicit photos of a four-year old child entrusted in his care in a public bathroom in a park.[6] ([Doc. No. 33] at ¶ 2.) For this disturbing and egregious conduct, a fair, just, and reasonable sentence was imposed which, in this Court's view, would be severely undermined by a reduction to time served after only approximately 35 months.

---

[4] Although Mr. Mount argues that he is currently appealing his conviction, (Def.'s Reply at 2), "the likelihood of success on direct appeal is not one of the enumerated factors under § 3553(a)." *United States v. Alqsous*, No. 16-cr-329, 2020 WL 3402861, at *7 (N.D. Ohio June 19, 2020). Thus, the Court finds the probability of success on his appeal irrelevant to the present determination here.

[5] Moreover, the Court notes that rehabilitation alone is not a basis for compassionate release. *See* U.S.S.G. § 1B1.13 cmt. n.3 ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for the purposes of this policy statement.").

[6] The Court finds that there is no support for Mr. Mount's assertion that the Government falsely characterized the circumstances of his offense in its opposition. (*See* Def.'s Reply at 2-3.) Indeed, as the Government argues, it is reported in his presentence investigation report that Mr. Mount's victim and the victim's mother lived with him at the time of his offense, giving him "regular access to her in the guise of helping her family." (Gov't's Opp'n at 7; *see also* [Doc. No. 52] at ¶ 12.)

As to any argument that Mr. Mount's continued confinement violates the Eighth Amendment's prohibition against cruel and unusual punishment, (*see* Def.'s Reply at 2), the Court also disagrees.  Given that there is no evidence that FCI-Sandstone is unable to effectively monitor or treat him should he contract COVID-19, along with a lack of evidence showing that Mr. Mount is at a higher risk of developing more severe symptoms from the virus in general, or a higher risk while in custody than if he were released, the Court finds no evidence of deliberate indifference to his potential medical needs in violation of the Eighth Amendment.  *See*, *e.g.*, *Wilson v. Williams*, 961 F.3d 829, 843 (6th Cir. 2020) (finding no evidence of deliberate indifference supporting Eighth Amendment claim brought by inmates at FCI-Elkton in light of "the BOP's ongoing and dynamic response" to COVID-19); *United States v. Mork*, No. 17-cr-176 (SRN/SER), 2020 WL 3026647, at *6 (D. Minn. June 5, 2020) (citing *United States v. Graham*, No. 19-cr-185(2) (SRN/KMM), 2020 WL 1685912, at *6 (D. Minn. Apr. 7, 2020) (further citations omitted)).

### III.  ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Pro Se Motion for Release [Doc. No. 138] is **DENIED**.

Dated:   July 15, 2020                                          s/Susan Richard Nelson
                                                                SUSAN RICHARD NELSON
                                                                United States District Judge